WILFORD F. BURRHUS AND SALLY A. BURRHUS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burrhus v. Commissioner
Docket No. 13244-83.
United States Tax Court
T.C. Memo 1986-430; 1986 Tax Ct. Memo LEXIS 178; 52 T.C.M. (CCH) 447; T.C.M. (RIA) 86430; September 11, 1986. Wilford F. Burrhus, pro se. Patricia Y. Taylor, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in and additions to petitioners' income tax as follows: Addition to Tax
Year
Deficiency
Section 6653(a) [1]
1979
$3,246.00
$162.30
1980
3,293.00
164.65
After concessions, the issues for decision are: (1) whether petitioners are entitled to certain deductions for employee business expenses; (2) whether certain activities by petitioners constituted activities "not engaged in for *180 profit" under section 183; (3) whether petitioners are entitled to deduct seminar and travel expenses in excess of those allowed by respondent; and (4) whether the deficiencies due from petitioners are attributable to negligence or the intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and exhibits attached thereto are incorporated herein by reference. Petitioners, Wilford F. Burrhus and Sally A. Burrhus, husband and wife, resided in DeSoto, Texas, at the time they filed their petition.During 1979 and 1980, Wilford was employed in Jacksonville, Florida by Sears as the manager of a Data Processing Center. He received wages of $36,018 and $38,418, respectively. Sally was a housewife during this period. (1) Employee Business Expenses
As the manager of the Data Processing Center, Wilford had sole responsibility for its operations. Sears evaluated his job performance in part by the morale of his staff members. To maintain good morale and a sense of camaraderie, petitioner frequently treated his staff to coffee, lunches, dinners, and fishing *181 trips. The only expenditure of this nature for which he ever sought and received reimbursement from Sears was $475 spent in 1979 on a farewell dinner for one of the employees. On their returns for 1979 and 1980, petitioners claimed deductions for nonreimbursed employee business expenses totaling $3,490.00 and $4,485.70, respectively. (2) Activities to Which Section 183 is Applicable Writing Activities
In 1978, Wilford began to write short stories after coming to the conclusion that he had a "gift for telling a story." The only advice and instruction on writing which Wilford sought or received was from one of his employees, Robert Wilkie, who permitted Wilford to use certain materials received in a correspondence course. Although Wilkie had not finished the course or succeeded in publishing anything, he gave Wilford advice and edited his writings. Wilford completed several short stories but was unable to sell any of them. Consequently, he received no income from his writing activities and ceased them entirely in 1983. On their returns for 1978, 1979, and 1980 petitioners claimed deductions totaling $2,022.63, $5,704.99 and $4,418.82, respectively, for expenditures *182 made with respect to the writing activities. [2] The deductions claimed for 1979 and 1980 were as follows: 1979
1980
Truck Expenses
$1,997.73
$1,501.42
Depreciation
1,758.51
1,758.51
Postage
12.70
Rent on business property
459.88
Repairs
479.20
Supplies
1,410.82
293.88
Travel and Entertainment
373.11
Tolls
78.00
Total Deductions
$5,704.99
$4,418.82
Shaklee Activities
In 1976, petitioners had become distributors for Shaklee, a manufacturer of organic food supplements and cleaning compounds. They reported losses of $5,493.17 and $2,845.05 on gross incomes of $16.59 and $32.53 in 1977 and 1978, respectively. [3]
On their returns for 1979 and 1980, petitioners claimed deductions with respect to their Shaklee activities of $42.71 and $1,964.38 while reporting gross receipts of $5.26 and $16.75. The deductions claimed were as follows: 1979
1980
Car and truck expenses
$16.84
$ 28.00
Furniture depreciation
25.87
25.87
Travel and Entertainment
1,910.51
Total Deductions
$42.71
$1,964.38
*183 The deduction of $1,910.51 for travel and entertainment expenses resulted from a trip taken by petitioners' entire family to Michigan. At trial petitioners conceded that at least $799.42 of the $1,910.51 is attributable to nondeductible personal items. Coin and Antique Gun Activities
In 1980, Wilford purchased coins and antique guns for approximately $6,200. He also spent $242.17 for information books, coin containers, and similar supplies. Petitioners reported no income from these activities, but claimed deductions for the supplies, plus another $155.95 for car and truck expense and depreciation. (3) Seminar and Travel Expenses
In addition to being a housewife, Sally is a painter. She usually sells her paintings at arts and crafts shows. However, in 1979, petitioners paid the expenses her parents incurred on a trip from Michigan to Florida and back. While in Florida the parents stayed at petitioners' home and inspected Sally's artwork. On their return to Michigan they took several pieces of her work with them in the hope of selling it for Sally. When only a few pieces sold, the parents became discouraged and discontinued their efforts. On their *184 1979 return, petitioners claimed a deduction for travel expenses totaling $939.76 which included $402 for the round trip air fares of her parents and $424.39 for meals during their Florida visit. Petitioners also claimed a deduction for seminars and training in the amount of $386.53. The record contains no evidence with respect to this item. OPINION (1) Employee Business Expenses
Petitioners contend that with respect to Wilford's employment at Sears they are entitled to deductions totaling $3,490.00 in 1979 and $4,485.70 in 1980 for amounts expended on behalf of Sears' employees. Respondent contends the deductions are not allowable because petitioners have failed to establish that any amount was expended for the purpose claimed, that any expenditure made was an ordinary and necessary business expense, and that any such expenditure was not subject to reimbursement by Sears. Petitioners have the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). From the record as a whole, we are convinced that Wilford expended certain funds in behalf of the members of his staff. However, we are unable to determine from the record the nature and amount *185 of the expenditures which were ordinary and necessary to his job and which were not. We are also unable to determine which were reimbursable by Sears. While petitioners have placed in the record various bits of evidence such as calendars and credit card receipts, they have utterly failed to demonstrate the relevance of these exhibits to their claimed expenses. Consequently, they have failed to carry their burden of proof and respondent's disallowance of the deductions is sustained. (2) Section 183 Activities
In his notice of deficiency respondent determined that all of the deductions claimed by petitioners with respect to their writing, Shaklee, and coin and gun activities should be disallowed because such activities were not engaged in for profit within the meaning of section 183. Section 183(a) provides that if an activity is not engaged in for profit, no deduction attributable to such activity is allowable except as provided in section 183(b). Section 183(b) separates deductions claimed with respect to an activity not engaged in for profit into two categories, i.e., those which are not dependent upon a profit motive and those which are so dependent. Then under *186 section 183(b)(1) the deductions which are not dependent upon a profit motive such as taxes and interest are allowable in full but under section 183(b)(2) the deductions which are dependent upon a profit motive are deductible only to the extent that the gross income derived from the activity exceeds the deductions allowable under section 183(b)(1). Insofar as applicable here, an "activity not engaged in for profit" is defined in section 183(c) as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162." Section 162 allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. In order to constitute a trade or business under section 162 an activity must "be entered into, in good faith, with the dominant hope and intent of realizing a profit, i.e., taxable income, therefrom." Hirsch v. Commissioner,315 F.2d 731, 736 (9th Cir. 1963), affg. a Memorandum Opinion of this Court. See also Hager v. Commissioner,76 T.C. 759, 784 (1981), and cases cited therein. The expectation of a profit need not be a reasonable one. *187 It is sufficient if there is a bona fide objective of making a profit. Fox v. Commissioner,80 T.C. 972, 1006 (1983), affd. without published opinion 742 F.2d 1141 (2d Cir. 1984), affd. sub nom. Barnard v. Commissioner,731 F.2d 230 (4th Cir. 1984), affd. without published opinion sub nom. Hook v. Commissioner,Kratsa v. Commissioner,Leffel v. Commissioner,Rosenblatt v. Commissioner,Zemel v. Commissioner,734 F.2d 5-7, 9 (3d Cir. 1984); Hager v. Commissioner,supra. Whether there is an intention to make a profit is one of the facts to be resolved from all the surrounding circumstances. Golanty v. Commissioner,72 T.C. 411, 426 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981); Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). The burden of proof with respect to the requisite intention is no petitioners. Rule 142(a); Golanty v. Commissioner,supra at 426. In making the determination as to intent, objective facts are to be given greater weight *188 than the parties' statements of their intent. Fox v. Commissioner,supra at 1007. Section 1.183-2(b), Income Tax Regs., contains a nonexclusive list of factors which have been considered relevant to a determination of whether an activity was engaged in for profit. Golanty v. Commissioner,supra. These factors are as follows: (1) the manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or his advisors, (3) the time and effort expended in carrying on the activity, (4) the expectation that assets used in the activity might appreciate in value, (5) the success of the activity and of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of profits, if any, which were earned, (8) the financial status of the taxpayer, and (9) elements of personal pleasure or recreation. First, petitioners failed to keep proper records with respect to all of such activities. Secondly, the activities were obviously not conducted in a businesslike manner. Thirdly, Wilford admittedly had no previous experience with writing *189 or in dealing with coins and guns. Nevertheless, he made no reasonable attempt to acquire competent help or advice with respect to either activity. He did receive advice and instruction from Robert Wilkie about writing, but Mr. Wilkie had not even completed a correspondence course in the subject and had never succeeded in publishing anything. Furthermore, the record contains no evidence of any attempt by petitioners to obtain advice or assistance with respect to either the Shaklee activities or with respect to the coins and guns. Fourthly, none of the activities were ever profitable. In fact, two of them never produced any receipts and the third, the Shaklee activities, only generated about $70.00 in gross receipts in four years, while suffering over $10,000 in losses. Finally, from our observations at trial, it was apparent that Wilford derived a great deal of personal pleasure from the writing and the coin and gun activities. We are convinced, therefore, that these activities were strictly hobbies and from a close examination of the scant record before us, we are satisfied and so find that the writing, Shaklee and coin and gun activities were not engaged in by petitioners with *190 the requisite profit objective.However, in the absence of any expenditures for interest and taxes, the deductions claimed with respect to the Shaklee activities are allowable under section 183(b)(1) to the extent of $5.26 in 1979 and $16.75 in 1980. (3) Seminar and Travel Expenses
In connection with Sally's painting activities petitioners claimed deductions for travel expenses of $939.76 in 1979 and $298.43 in 1980. They also claimed seminar expenses of $386.53 and $381.21, respectively. Respondent allowed both the travel and seminar expenses for 1980, but with respect to 1979 respondent disallowed travel expenses in excess of $347.40 and seminar expenses in excess of $152.50 for lack of substantiation. Here again petitioners have the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). The record contains no proof with regard to seminar expenses for 1979 and this item is deemed to have been conceded by petitioners. As to the travel expenditures, the disallowed portion is attributable entirely to the sums expended on the trip to Florida by Sally's parents. While they did examine some of her work while in Florida and actually took *191 some of it back to Michigan for sale, we are convinced from the record as a whole that the purpose of the trip was predominantly personal and not business and therefore respondent's determination on this issue is sustained. (4) Negligence
Respondent's determination that petitioners are liable under section 6653(a) for the addition to tax for negligence or the intentional disregard of rules and regulations is presumptively correct and petitioners have the burden of proving the determination is erroneous. Welch v. Helvering,supra;Otis v. Commissioner,73 T.C. 671 (1980); Rule 142(a). Since petitioners have offered no proof on this issue, respondent's determination is sustained. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, during the years in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
2. Petitioners' return for 1978 was not audited; hence, the $2,022.63 loss was allowed.↩
3. The returns for 1977 and 1978 were not audited.↩